UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff/Respondent,

        CASE NO. 2:07-CR-20167
v.             2:09-CV-13350
        JUDGE PAUL D. BORMAN
THOMAS LEE MERCER,         MAGISTRATE JUDGE PAUL J. KOMIVES

    Defendant/Movant.
                             /

**REPORT AND RECOMMENDATION**

I.    <u>RECOMMENDATION</u>: The Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. If the Court accepts this recommendation, the Court should also deny defendant a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural Background*

Defendant/movant Thomas L. Mercer is a federal prisoner, currently confined at the Federal Correctional Institution in Elkton, Ohio. On March 29, 2007, defendant was indicted in this Court with 23 counts of aiding and assisting the filing of a false tax return, 26 U.S.C. § 7206(2), and seven counts of obstruction of the due administration of the revenue laws, 26 U.S.C. § 7212(a). The Indictment alleged that defendant, a tax preparer, filed 23 federal income tax returns for various individuals that contained materially false claims for deductions for business losses, unreimbursed employee expenses, tuition and fees, and charitable contributions. The seven obstruction counts were based on defendant attempting to persuade his former clients to lie to investigators once he

1

became aware that the Internal Revenue Service (IRS) was investigating him. On September 13, 2007, defendant pleaded guilty to all 30 counts charged in the Indictment. The plea was not entered pursuant to a plea agreement with the government. At the December 11, 2007, sentencing hearing, the Court determined that the amount of "tax loss" caused by defendant's conduct was $331,478.00, and that defendant's guideline range was 77-96 months' imprisonment. The Court sentenced defendant to a term of 86 months' imprisonment, to be followed by a one year term of supervised release. The Court also ordered defendant to pay the IRS $331,478.00 in restitution, and imposed special assessments totaling $3,000.00. The Court allowed defendant to remain free on unsecured bond, ordering him to voluntarily report to prison on January 25, 2008. *See* Sentence Tr., at 15-16; Judgment in a Criminal Case, at 2.

Defendant filed a notice of appeal on December 26, 2007. On January 25, 2008, defendant failed to report to the designated place of imprisonment as required by the Court's sentence. On February 19, 2008, the Court granted the Government's motion to revoke defendant's bond and issued an arrest warrant. Based on defendant's failure to report to prison as ordered, on December 11, 2008, the Sixth Circuit dismissed defendant's appeal pursuant to the fugitive disentitlement doctrine. The court ordered that the appeal was dismissed unless defendant reported to prison within 30 days of the date of the court's order. *See United States v. Mercer*, No. 08-1013 (6th Cir. Dec. 11, 2008). The court of appeals issued its mandate on January 12, 2009. Defendant was arrested and transported to prison on June 8, 2009.

On August 24, 2009, defendant filed this motion to vacate, correct, or set-aside his sentence pursuant to 28 U.S.C. § 2255. As grounds for relief, defendant raises three claims: (1) suppression of exculpatory evidence and improper sentence with respect to the amount of tax loss; (2) ineffective

2

assistance of appellate counsel in failing to preserve defendant's appellate rights; and (3) ineffective assistance of counsel based on counsel's failure to object to the imposition of consecutive sentences. The Government filed a response on March 12, 2010. The Government argues that defendant's claims are without merit. Defendant filed a reply on March 25, 2010. For the reasons that follow, the Court should deny defendant's motion.

B. *Analysis*

1. *Scoring of "Tax Loss"*

Defendant first claims that his sentence was based on an incorrect scoring of the "tax loss" caused by his conduct. Specifically, defendant contends that the IRS recovered some of the amounts claimed as deductions by his clients, and that these recoveries should have been off-set against the amount of the tax loss calculated by the Court. Defendant also argues that the Government suppressed exculpatory evidence relating to the IRS recovery of off-set amounts. The Court should conclude that these claims are without merit.

*a. Determination of Amount of "Tax Loss"*

In determining defendant's guideline sentence range, the Court relied on U.S.S.G. § 2T1.4 as the applicable provision for establishing defendant's base offense level. That guideline section, applicable to an offense for "Aiding, Assisting, Procuring, Counseling, or Advising Tax Fraud," provides in relevant part, that the base offense level is determined as the "[l]evel from § 2T4.1 (Tax Table) corresponding to the tax loss." U.S.S.G. § 2T1.4(a)(1). The guideline further provides that "[f]or purposes of this guideline, the 'tax loss' is the tax loss, as defined in § 2T1.1, resulting from the defendant's aid, assistance, procurance or advice." U.S.S.G. § 2T1.4(a). Section 2T1.1, in turn, provides special rules for calculation tax loss. In relevant part, that section provides:

3

(1) If the offense involved tax evasion or a fraudulent or false return, statement, or other document, the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed).
* * * *
(4) If the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled.

(5) The tax loss is not reduced by any payment of the tax subsequent to the commission of the offense.

U.S.S.G. § 2T1.1(c). Applying these provisions, the Court determined that the "tax loss" for sentencing purposes was $149,007.00, the amount of the refunds paid to taxpayers to which they were not entitled based on the 23 income tax returns covered by the Indictment, plus $182,471.00 in refunds paid to taxpayers with respect to 29 other fraudulent returns prepared by defendant which the Court determined to be relevant conduct, for a total of $331,478.00.

Here, defendant claims that the amount of tax loss calculated under §§ 2T1.1(c) and 2T1.4(a) should have been off-set by amounts the IRS recovered from the taxpayers at issue. In support of this argument, defendant relies on § 2B1.1, the guideline applicable to determining the base offense level for "Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States." This guideline provides for increasing base offense levels based on the amount of loss caused or attempted to be caused by the defendant. *See* U.S.S.G. § 2B1.1(b)(1). The application notes to the guideline provide, in relevant part:

> Loss shall be reduced by the following:
> (I) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or

4

government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

    (ii) In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.

U.S.S.G. § 2B1.1, Application Note 3(E). Defendant's reliance on Application Note 3(E) is misplaced, for two reasons.

First, defendant was not sentenced pursuant to § 2B1.1, but pursuant to § 2T1.4. To the extent that defendant claims he should have been sentenced pursuant to § 2B1.1, his argument is without merit. Section 2T1.4 and Appendix A to the Guidelines make clear that defendant's crime of conviction, 26 U.S.C. § 7206(2), is governed by § 2T1.4 in determining the base offense level. *See* U.S.S.G. § 1B1.2(a) & Appendix A; § 2T1.4, Commentary–Statutory Provisions. For this reason, defendant's reliance in his reply brief on *United States v. Rayborn*, 957 F.2d 841 (11th Cir. 1992); *United States v. McBride*, 362 F.3d 360 (6th Cir. 2004); *United States v. Sedore*, 512 F.3d 819 (6th Cir. 2008); *United States v. Garth*, 540 F.3d 766 (8th Cir. 2008); *United States v. Garcia*, 903 F.2d 1022 (5th Cir. 1990); and *United States v. Fleming*, 128 F.3d 285 (6th Cir. 1997), is misplaced. In each of these cases the defendant was convicted either of making a false claim to the IRS under 18 U.S.C. § 287 or of conspiracy to defraud the IRS under 18 U.S.C. § 286. The governing guideline for determining the base offense level for these offenses is § 2B1.1 (or was the predecessor provisions in the now-deleted § 2F1.1). *See* U.S.S.G., Appendix A; § 2B1.1, Commentary–Statutory Provisions. None of these cases casts doubt on the applicability of § 2T1.4

5

to defendant's conviction under 26 U.S.C. § 7206(2).[1]  And, under § 2T1.1, which is explicitly incorporated by § 2T1.4(a), it is clear that "[t]he tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." U.S.S.G. § 2T1.1(c)(5); *see also*, *Gerardo v. United States*, No. 98-3610, 1999 WL 528093, at *2 (7th Cir. July 20, 1999) (defendant not prejudiced by counsel's alleged failure, for sentencing purposes, to investigate collection of tax debt by IRS from third party because under § 2T1.1(c)(5) "the subsequent payment by Gerardo or a third-party of the tax fraud loss would not have diminished the loss for sentencing purposes.").

Second, even if § 2B1.1, Application Note 3(E) were available to defendant, he is not entitled to an offset under the terms of that provision.  Application Note 3(E), as noted above, provides that the amount of loss may be offset by "[t]he money returned, and the fair market value of the property returned and the services rendered, *by the defendant* or other persons acting jointly with the defendant, to the victim *before the offense was detected*." U.S.S.G. § 2B1.1, Application Note 3(E)(I) (emphasis added).  In defendant's case, any money recovered by the IRS from the taxpayers at issue does not constitute money returned by "defendant or other persons acting jointly with the defendant."  Further, such money was not returned "before the offense was detected."  Thus, even if Application Note 3(E) were otherwise available, by its terms defendant is not entitled to an offset under that provision.  *See United States v. Newsom*, 281 Fed. Appx. 464, 467 (6th Cir. 2008); *see also*, *United States v. Dullum*, 560 F.3d 133, 138 (3d Cir. 2009); *United States v. Yaroch*, No. 07-20243-BC, 2008 WL 2129846, at *28 (E.D. Mich. May 19, 2008) (Luddington, J.).

---

[1] Petitioner's reliance on *United States v. Pollen*, 978 F.2d 78 (3d Cir. 1992) and *United States v. Marston*, 517 F.3d 996 (8th Cir. 2008), fares no better.  In *Pollen*, the court actually applied § 2T1.1, not § 2B1.1, to the defendant's conviction for tax evasion under 26 U.S.C. § 7201.  In *Marston*, the court did not discuss the appropriate base offense level for the defendant's conviction under 26 U.S.C. § 7206(2); rather, the issue in the case was whether the trial court had erred in concluding that the guideline sentence was presumptively reliable without considering the sentencing factors in 18 U.S.C. § 3553(a).

Accordingly, the Court should conclude that defendant is not entitled to relief on his claim regarding the calculation of the tax loss.

### b. Suppression of Exculpatory Evidence

Relatedly, defendant also contends that the government suppressed exculpatory evidence relating to the IRS's efforts to collect the amounts owed from taxpayers. The Court should conclude that defendant is not entitled to relief on this claim.

The Due Process Clause requires the government to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

Here, even assuming that the Government suppressed, within the meaning of *Brady*, evidence relating to the IRS's collection efforts, the evidence was not exculpatory or material to defendant's sentence. As explained above, defendant was not entitled to a credit against the calculated tax loss for amounts recovered by the IRS from the taxpayers under § 2B1.1, Application

7

Note 3(E), both because defendant's base offense level was determined by § 2T1.4 rather than § 2B1.1, and because any recovery by the IRS does not come within the terms of Application Note 3(E). Thus, disclosure of this information to defendant or the Court would have had absolutely no impact on the calculation of defendant's sentence, and the evidence therefore was neither exculpatory nor material. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

2. *Ineffective Assistance of Counsel*

Defendant next raises several ineffective assistance of counsel claims. Specifically, defendant contends that counsel was ineffective at sentencing for failing to object to the Court's tax loss calculation and imposition of consecutive sentences and on appeal for moving to dismiss his appeal on the basis of the fugitive disentitlement doctrine.[2] The Court should conclude that defendant is not entitled to relief on these claims.

*a. Legal Standard*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an

---

[2]Defendant was represented by the same attorney in this Court and on appeal.

ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

### b. Sentencing Counsel

Defendant contends that counsel was ineffective at sentencing for failing to object to the Court's calculation of the tax loss and argue that he should receive a credit for the amounts recovered by the IRS from the individual taxpayers. As explained above, however, defendant was not entitled to any offset to the tax loss calculation based on amounts recovered by the IRS. Counsel cannot be deemed ineffective for failing to raise a meritless argument regarding the tax loss calculation under § 2T1.4. *See Gandy v. United States*, 538 F. Supp. 2d 726, 728 (D. Del. 2008); *Fairley v. United States*, 298 F. Supp. 2d 679, 685 (E.D. Mich. 2004) (Gadola, J.); *Guzman v. United States*, 277 F. Supp. 2d 255, 260 (S.D.N.Y.2003).

Defendant also contends that counsel was ineffective for failing to object to the Court's

imposition of consecutive sentences. The Court sentenced defendant to a term of 36 months' imprisonment on each of Counts 1-23, to be served concurrently, to a term of 36 months' imprisonment on each of Counts 24-28, to be served concurrent with each other but consecutive to the sentences on Counts 1-23, and to a term of 14 months' imprisonment on each of Counts 29-30, again to be served concurrent with each other but consecutive to the sentences on Counts 1-23 and Counts 24-28. Again, defendant cannot show that any objection on this basis would have been successful, and thus he cannot show that counsel was ineffective.

The Guidelines provide that in cases involving multiple counts of conviction, a court should determine the appropriate sentence range through the following procedure:

> When a defendant has been convicted of more than one count, the court shall:
> (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.
> (2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.
> (3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

U.S.S.G. § 3D1.1(a). Here, however, the Court did not calculate defendant's sentence by grouping convictions under § 3D1.1(a). Rather, the Court determined the applicable guideline range solely for the counts carrying the greatest range, that is, Counts 1-23. For these counts, the guideline range was determined as follows: a base offense level under § 2T1.4(a)(1) of 18, two point enhancements each for defendant having been in the business of preparing tax returns (§ 2T1.4(b)(1)), defendant's use of sophisticated means (§ 2T1.4(b)(2), and obstruction of justice (§ 3C1.1), as well as a two point reduction for acceptance of responsibility (§ 3E1.1), yielding a total base offense level of 22. Combined with defendant's criminal history category V, this yielded a guideline range of 77-96 months. *See* U.S.S.G. Chapter 5, Part A (sentencing table). Each conviction under 26 U.S.C. §

7206(2), however, carried a maximum penalty of three years' imprisonment. *See* 26 U.S.C. § 7206. Because the appropriate guideline range exceeded the statutory maximum for the offense carrying the highest guideline range, the Guidelines instructed the Court to impose consecutive sentences on separate counts as necessary to achieve a total term of imprisonment within the guidelines range. *See* U.S.S.G. § 5G1.2(d) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."). Thus, any objection to the Court's imposition of consecutive sentences to achieve the appropriate total punishment would have been futile, and counsel cannot be deemed ineffective for failing to have raised such an objection. Accordingly, the Court should conclude that defendant is not entitled to relief on his sentencing related ineffective assistance of counsel claims.

### c. Appellate Counsel

Defendant also contends that counsel was ineffective on appeal by moving to dismiss the appeal on the basis of the fugitive disentitlement doctrine. The Court should conclude that defendant is not entitled to relief on this claim because he cannot show that counsel's performance was deficient.

"It has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). This fugitive disentitlement rule, which is "a long-standing and established principle of American law," *Estelle v. Dorrough*, 420 U.S. 534, 537 (1975),

is premised on two rationales. First, where a defendant is outside the court's jurisdiction at the time his appeal is decided, there can "be no assurance that any judgment it issued would prove enforceable." *Ortega-Rodriguez*, 507 U.S. at 239-40. Second, "'[n]o persuasive reason exists why [a] [c]ourt should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.'" *Id*. at 240 (quoting *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970)); *see also*, *Degen v. United States*, 517 U.S. 820, 824 (1996).

"The Sixth Circuit has not hesitated to apply the doctrine of fugitive disentitlement to dismiss the direct appeals of defendants who fled the jurisdiction during the appeals process and remained at large." *United States v. Yang*, 144 Fed. Appx. 521, 522 (6th Cir. 2005); *see e.g.*, *United States v. Lanier*, 123 F.3d 945, 946 (6th Cir. 1997) (en banc); *United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). In light of this body of law, defendant cannot show that counsel was deficient in moving to dismiss his appeal based on his status as a fugitive. Any "attempt to have an appeal heard would have been futile as long as the [defendant] remained at large." *State v. Rogers*, 434 S.E.2d 402, 406 (W. Va. 1993). "[B]y his own misconduct in fleeing, the defendant and not his counsel must be held responsible for th problem created over his [appeal]." *State v. Williams*, 675 S.W.2d 499, 502 (Tenn. Ct. Crim. App. 1984); *see also*, *Buckley v. Lockhart*, 892 F.2d 715, 720 & n.5 (8th Cir. 1989) (alleged ineffectiveness of appellate counsel in failing to file direct appeal after petitioner had absconded did not excuse petitioner's procedural default in failing to raise habeas claims on direct appeal in light of the well established fugitive disentitlement doctrine; "[b]ecause of

[petitioner's] escape from prison immediately after sentencing, [his] ineffective assistance of counsel claim cannot provide cause for his procedural default." "By escaping, for whatever reason, [petitioner] simply has lost his right to file or maintain an appeal and must abide the consequences.").

Further, defendant cannot establish prejudice as a result of counsel's moving to dismiss the appeal. Although counsel's action resulted in defendant losing his appeal, there is no *per se* prejudice. While defendant need not show prejudice in the sense of having a potentially meritorious appellate claim, *see Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000), he must still show prejudice in the sense that "counsel's deficient performance . . . actually cause[d] the forfeiture of the defendant's appeal." *Id*. at 484. "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would [not have lost his appeal], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id*. Here, there is no reasonable probability that defendant's appeal would have survived even if counsel had not himself moved to dismiss the appeal under the fugitive disentitlement doctrine. Even assuming that counsel did not do so, it is more than likely that the government would have done so. And, in light of the Sixth Circuit's repeated dismissals of appeals filed by fugitive defendants, it is equally likely that the appeal would have been dismissed on the government's motion. Thus, defendant cannot establish prejudice. *See Katz v. United States*, 920 F.2d 610, 613-14 (9th Cir. 1990) (even if counsel was deficient in failing to file appeal, no prejudice shown where defendant had become fugitive and thus appeal would have been dismissed under fugitive disentitlement doctrine); *Wayne v. Wyrick*, 646 F.2d 1268, 1270-71 (8th Cir. 1981) ("By his escape Wayne showed his disdain for the law and his unwillingness to abide by decisions adverse to him. While we think it would have been preferable

for his attorney to respond in some way to the court's dismissal notice, there was no course within his power which could have salvaged Wayne's appeal. For that reason Wayne was in no way prejudiced by his attorney's inaction.").[3]

In short, in light of defendant's failure to report and resulting status as a fugitive at the time his appeal was pending, defendant's counsel was not constitutionally deficient and, even if he was, defendant cannot show that he was prejudiced by counsel's deficient performance. Accordingly, the Court should conclude that defendant is not entitled to relief on this claim.

C.  *Recommendation Regarding Certificate of Appealability*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a defendant may not appeal a denial of a motion to vacate brought under § 2255 unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never

---

[3]The Ninth Circuit's decision in *Katz* was abrogated in part in *Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992), which disapproved of the *Katz* court's application of the *Strickland* prejudice prong, instead concluding that the failure to file a notice of appeal is prejudice *per se*. *See Lozada*, 964 F.2d at 956-58. *Lozada*, in turn, was abrogated by the Supreme Court's decision in *Roe v. Flores-Ortega*, *supra*, which as noted above held that a defendant must establish that counsel's deficient performance caused him to lose his appeal. *See Roe*, 528 U.S. at 484-86.

14

issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. foll. § 2255, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2255. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of defendant's § 2255 motion,

15

the Court should also deny defendant a certificate of appealability. As explained in detail above, the Guidelines clearly indicate that defendant was not entitled to an offset in the "tax loss" calculation based on the IRS's recovery of any amounts from third-party taxpayers, and equally clearly the Guidelines provide that a court should run sentences consecutive to each other when the statutory maximum on any individual count does not allow for a sentence of imprisonment commensurate with the Guidelines range. Thus, the resolution of these sentencing claims is not reasonably debatable. And because the answers to these sentencing claims are clear, it is equally not debatable that counsel was not constitutionally ineffective in failing to raise these claims at the time of sentencing. Finally, in light of defendant's own actions in making himself a fugitive and the long-established fugitive disentitlement doctrine, it is not reasonably debatable that defendant cannot establish either that counsel was deficient in moving to dismiss his appeal or that he was prejudiced by counsel's actions. Accordingly, the Court should conclude that defendant is not entitled to a certificate of appealability.

D. *Conclusion*

In view of the foregoing, the Court should conclude that defendant has not established his entitlement to relief under § 2255 because his claims are without. Accordingly, the Court should deny defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court should also deny defendant a certificate of appealability.

III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                             s/Paul J. Komives  
                                             PAUL J. KOMIVES  
                                             UNITED STATES MAGISTRATE JUDGE

Dated: 4/20/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on April 20, 2010.

                            s/Eddrey Butts  
                            Case Manager